IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CARMELA H. V. LUKE S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CARMELA H. ET AL., APPELLEES,

V.

LUKE S., APPELLANT.

Filed May 5, 2026.    No. A-25-615.

Appeal from the District Court for Buffalo County: KANE M. RAMSEY, Judge. Affirmed.

Michael J. Synek for appellant.

No appearance for appellees.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

On behalf of her two minor daughters, Carmela H. filed a petition for a domestic abuse protection order against her former spouse, Luke S. An ex parte domestic abuse protection order was entered by the Buffalo County District Court, and in response, Luke timely requested a hearing. Following the hearing, the district court affirmed the protection order. Luke appeals, arguing that the district court erred by finding that domestic abuse occurred, by finding he may have engaged in nonconsensual sexual contact, by admitting irrelevant evidence, and by excluding offered evidence. We affirm.

## BACKGROUND

Carmela and Luke are the biological parents of two minor children, 11-year-old Ariah and 14-year-old Briley. The parties divorced in 2018 and now the children reside primarily with Carmela during the week and spend alternating weekends with Luke.

- 1 -

On June 9, 2025, Carmela petitioned for a domestic abuse protection order on behalf of both children against Luke pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024), the relevant statute in effect at that time. Section 42-924 has since been transferred to Neb. Rev. Stat. § 26-103 (Cum. Supp. 2025), part of the Protection Orders Act, Neb. Rev. Stat. § 26-101 et seq. (Cum. Supp. 2025), which became effective on September 3, 2025. Since the Protection Orders Act was not yet in effect when the protection order was entered in this case, we will rely upon the statutory scheme in effect at that time.

Carmela's affidavit described multiple incidents of physical abuse involving Ariah in May. Carmela alleged that Luke picked Ariah up, threw her to the floor, and held her down with her legs pressed to her chest. When Ariah attempted to get up, Luke shoved her into a wall, leaving a bruise on her arm. A photograph of the bruise was attached to the affidavit. Carmela further alleged that on another occasion, Luke placed both hands around the back of Ariah's neck and pushed her forward. The following day, he grabbed her neck with both hands while yelling at her in a restaurant, leaving her neck red and sore.

Carmela also attached a document to her petition that reported prior incidents from March 2024 to April 2025, reflecting Luke's pattern of threats, intimidation, and physical conduct toward both children.

In the attached document Carmela reported that Luke made repeated threats of physical violence toward Ariah, including that he would hit her hard enough to "traumatize" her sister or make her "stitches pop out" after she had hernia surgery. On one incident, he kicked Ariah's legs out from under her, causing her to fall, and then yelled at her to get up.

As to Briley, Carmela reported in the attached document that Luke routinely screamed at her and forced her to drive without a license despite her repeated objections. On one occasion, he forced her to drive on the interstate at high speeds while yelling at her to go faster. On another, he physically removed her from the passenger seat and forced her into the driver's seat. Carmela further alleged in the attached document that Luke had grabbed Briley by the arms and shoulders, squeezed her, and yelled at her when she did not move quickly enough when getting ready to leave. He also called her a "meth head" related to her prescribed ADHD medication and threatened to "beat the shit out of her," because she took a phone charger she thought was hers.

On June 11, 2025, the district court entered an ex parte domestic abuse protection order, prohibiting Luke from contacting the children. In its order, the district court found that Carmela had stated facts showing that Luke "attempted to cause or intentionally and knowingly caused bodily injury with or without a dangerous instrument; by means of a credible threat, placed the petitioner(s) in fear of bodily injury; or engaged in sexual contact or sexual penetration without consent." Luke subsequently requested a hearing which was held on July 9, 2025.

At the hearing, the district court received Carmela's petition and affidavit into evidence, as well as the photograph of Ariah's bruise. The copy of Carmela's petition and affidavit offered and entered into evidence did not include the attached document reporting incidents from March 2024 to April 2025; however it was considered by the court in issuing the ex parte protection order in June. Luke presented testimony from Department of Health and Human Services (DHHS) agent Taylin McCreery, his mother Elena S., and himself.

McCreery testified that she met with Carmela and the children in May 2025, following an intake report concerning the children. According to McCreery, Carmela reported that Ariah

disclosed bruising caused by Luke to a school official. McCreery observed forensic interviews in which Ariah described the bruise as accidental, stating that Luke had caused it while picking her up and placing her on the bed.

McCreery testified that Luke said Ariah became upset about softball practice and began to scratch and hit him. Although McCreery expressed concerns to Luke about his comments to the children and recommended counseling, she testified that the children did not express fear of Luke in their interviews and McCreery concluded they were safe in his care. DHHS ultimately deemed the abuse allegations unfounded. The district court received the DHHS letter documenting the unfounded claim as evidence.

Elena similarly testified that she had not observed the children acting afraid of Luke on any occasion. She emphasized that Briley had previously exaggerated a claim of being hit by a pastor. She stated that Briley had explained the event by hitting a stuffed animal as hard as she could, sending it flying. Luke's testimony reiterated the details of this incident, stating that Briley later claimed that the pastor had violently struck her in the head; however, security footage revealed that Briley was tapped on the head with a Bible.

Luke denied the alleged physical abuse. He testified that he did not throw or pin Ariah, and that any contact resulting in a bruise occurred from pulling her from her bed to go to softball practice. Luke maintained that he did not mean to leave a bruise on Ariah. He further denied grabbing Ariah by the neck on any occasion. He acknowledged making threatening statements, including variations of "I will hit you so hard," but claimed he said them jokingly in a "high pitched voice" and never intended to follow through.

In contrast, both children testified consistently with Carmela's affidavit and attached document. They each reported fearing Luke and testified that they could generally distinguish between instances when he was joking versus serious. Ariah largely confirmed the reported incidents as submitted by Carmela. According to Ariah, Luke bruised her arm when she refused to come eat. Ariah testified that Luke put her down on the floor, yelled at her to get up, and then physically shoved her into the living room. Briley was in the home at the time and testified that she observed Luke pushing Ariah into the living room and recalled that Aria looked terrified.

Ariah further recalled Luke grabbing her by the back of the neck in a restaurant because she was in the way of the aisle and Luke picking her up by her head while they were "horsing around." She also corroborated Luke's conduct toward Briley, including forcing her to drive and physically forcing Briley into the driver's seat. Ariah only disputed the attached document regarding the allegation that Luke kicked her legs out. Instead, she testified that she was lying on the floor when Luke kicked her and could not recall if it caused pain.

Briley likewise confirmed the reported incidents in the affidavit and attached document. She recounted hearing Luke threaten Ariah by saying he would "hit her so hard, I'll make your stiches pop out," and testified he was not joking. Briley also recalled the argument over a phone charger in which Luke told Briley he would "beat the shit out of [her]." Ariah testified that she witnessed that exchange.

On July 15, 2025, the district court expressly found the protected parties' testimony credible and affirmed the ex parte domestic abuse protection order.

Luke appeals. Carmela did not file a response brief.

## ASSIGNMENTS OF ERROR

Luke assigns, reordered and restated, that the district court erred in (1) finding that domestic abuse occurred, (2) listing sexual contact as a basis for affirmance of the protection order, (3) admitting irrelevant evidence from the petition and affidavit, and (4) excluding statements of party opponents and cross-examination regarding character for untruthfulness.

## STANDARD OF REVIEW

A protection order pursuant to § 42-924 is analogous to an injunction. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by these rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Paw K. v. Christian G.*, 315 Neb. 781, 1 N.W.3d 467 (2024). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Id*.

## ANALYSIS

### DOMESTIC ABUSE

Luke assigns that the district court erred in finding that domestic abuse occurred. Luke contends that the evidence shows no bodily injury, no credible threat of injury, and no sexual conduct. He maintains that several of the allegations were exaggerated, unsupported, or outside the statutory definition of abuse.

A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). A protection order is analogous to an injunction, and a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle that party to relief. *Id*. As such, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. *Id*. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id*.

The Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2024), provides that any victim of domestic abuse may file a petition and affidavit

for a protection order with the clerk of the district court. See § 42-924. Whether domestic abuse occurred is a threshold issue, and absent abuse as defined by § 42-903, a protection order may not remain in effect. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022). "Abuse" is defined in relevant part as the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument; (b) placing, by means of credible threat, another person in fear of bodily injury; or (c) engaging in sexual contact or sexual penetration without consent. See § 42-903(1). Family or household members include spouses or former spouses and children. See § 42-903(3).

In considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper but may also consider a number of factors pertinent to the likelihood of future harm. See *Garrison v. Otto, supra*. Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. *Id*.

Here, Carmela's petition and affidavit were received into evidence at the show cause hearing in which she recounted several instances of abuse as defined by § 42-903(1)(a) (attempting to cause or intentionally and knowingly causing bodily injury with or without dangerous instrument). Notably, Carmela reported that Luke grabbed Ariah by the arm, causing bruising, and grabbed Ariah by the neck on two separate occasions in May 2025. Testimony by the children also established abuse as defined by § 42-903(1)(b) (placing, by means of credible threat, another person in fear of bodily injury), as Luke threatened both children with physical violence multiple times between March 2024 and May 2025. Based on the foregoing, Carmela proved by a preponderance of the evidence the truth of the facts supporting the domestic abuse protection order.

The burden then shifted to Luke to show cause as to why the protection order should not remain in effect. See *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). The testimony of Luke's witnesses did not rebut the instances of abuse noted above. Luke himself stated that he grabbed Ariah by her arm and unintentionally left a bruise as she attempted to get away from him. He also confirmed that he threatened the children with physical abuse but maintained that he only said the threats in a joking manner. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *id*. The district court expressly found the testimony of the protected parties credible when affirming the ex parte domestic abuse protection order. Thus, the district court found Carmela's version of events to be more credible than Luke regarding the allegations contained in her petition, and that the evidence presented by Luke did not sufficiently rebut Carmela's prima facie case for the domestic abuse protection order. We decline to disturb that finding.

After our de novo review of the record, we find that Carmela's petition and affidavit established by a preponderance of the evidence that the children were victims of domestic abuse, and Luke did not provide sufficiently credible evidence to the contrary. Accordingly, we find no error in the district court's affirmance of the ex parte domestic abuse protection order.

Luke next argues that the district court erred by listing its finding of "engaging in sexual contact or sexual penetration without consent" in the order affirming the protection order. Brief for appellant at 14-15. Luke argues that the record does not include any reference to sexual contact and that including sexual contact in the order stigmatized him and damaged his reputation. *Id*.

In the present case, the district court utilized a preprinted protection order form, which stated that Carmela established that Luke "attempted to cause or intentionally and knowingly caused bodily injury with or without a dangerous instrument; by means of a credible threat, placed the petitioner(s) in fear of bodily injury; or engaged in sexual contact or sexual penetration without consent as defined Neb. Rev. Stat. § 28-318 [Cum. Supp. 2025]." The terms in the order are connected by "or." The word "or," when used properly, is disjunctive, and there is no indication that the statutory context overcomes the term's ordinary meaning here. See *Grammer v. Lucking*, 292 Neb. 475, 873 N.W.2d 387 (2016).

As recognized in *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018), the threshold inquiry is whether domestic abuse occurred such that the protection order should remain in effect. The focus is not on individual phrases within the standardized order, but rather on whether the evidence supports the continuation of the order to prevent future harm. See *id.*

Here, as examined above, the district court found sufficient evidence to support the existence of domestic abuse. Because the order permits a finding based on alternative forms of conduct, the court was not required to make a separate, specific factual finding for each category listed in the preprinted form. Additionally, Neb. Rev. Stat. § 42-924.02 (Cum. Supp. 2024) mandated the use of the standardized protection order forms adopted by the State Court Administrator, and those forms are the only ones authorized for use. Accordingly, even if the record does not specifically establish sexual contact, the inclusion of the language does not invalidate the district court's order finding alternative statutory grounds for affirmance. This assignment fails.

IRRELEVANT EVIDENCE

Luke further argues that the district court erred by admitting the petition and affidavit as evidence and by allowing testimony which did not constitute domestic abuse. Luke maintains that the petition and affidavit contain hearsay statements and irrelevant allegations. He further asserts that Briley's testimony alleging that he called her a "meth head" does not constitute domestic abuse and therefore was not relevant. Brief of appellant at 37.

Turning to Luke's first argument, at the show cause hearing, the district court admitted into evidence over Luke's objection, the petition and affidavit to obtain a protection order which was filed by Carmela. Luke argued at the hearing, as he does now on appeal, that the petition and affidavit should not be considered as evidence because it contains hearsay statements and irrelevant allegations.

This court has previously recognized that protection order proceedings are summary in nature. See *Zuco v. Tucker*, 9 Neb. App. 155, 609 N.W.2d 59 (2000). At a show cause hearing in protection order proceedings, a prima facie case may be established by a form petition and affidavit, which has been properly admitted into evidence. *Mahmood v. Mahmud*, 279 Neb. 390,

778 N.W.2d 426 (2010). In fact, the petition and affidavit is routinely admitted into evidence when offered. See Neb. Rev. Stat. § 42-925(1) (Cum. Supp. 2024). Accordingly, we find no abuse of discretion by the district court in admitting the petition and affidavit over Luke's objection.

Turning to Luke's second argument regarding Briley's testimony, the district court did not abuse its discretion in admitting Briley's testimony. According to Neb. Rev. Stat. § 27-401 (Reissue 2016), relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The bar for establishing relevance is not a high one. *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019). Relevancy requires only that the probative value be "something more than nothing." *Id.* at 65, 921 N.W.2d at 813 (quoting *Lindsay Internat. Sales & Serv. v. Wegener*, 301 Neb. 1, 917 N.W.2d 133 (2018)). We will not reverse a trial court's determination regarding the relevancy of evidence unless it constitutes an abuse of discretion. See *State v. Brown, supra*.

Here, the petition, affidavit, and Briley's testimony were relevant to whether domestic abuse, or the threat thereof, occurred. Luke's statement calling Briley a "meth head," while not itself abusive conduct, was probative of the parties' interactions and the context in which Briley alleged fear of harm.

We also conclude that the district court did not abuse its discretion by finding that the testimony was not subject to exclusion under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018). Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *Id.* It speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id.*

Although the testimony may have been unfavorable to Luke, it did not create an undue tendency to suggest a decision on an improper basis. The testimony was brief and directly related to the parties' interactions and context in which the alleged abuse occurred. Furthermore, witness credibility and the weight to be given to a witness' testimony are questions for the trier of fact. See *Amanda F. v. Daniel K.*, 313 Neb. 573, 984 N.W.2d 909 (2023). It is within the trier of facts province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing and reject so much of it as in its judgment is not entitled to credit. See *In re Estate of Hasterlik*, 299 Neb. 630, 909 N.W.2d 641 (2018).

Thus, the district court acted within its discretion in admitting Briley's testimony concerning Luke's name calling.

EXCLUDED EVIDENCE

Luke also argued that the district court erred by excluding evidence, including his testimony about statements made by Ariah and Briley, which he contends were admissible as statements of party opponents. He further asserts the court improperly restricted his cross-examination of Briley by barring inquiry into a prior incident of abuse despite its relevance to her credibility.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2022). The statement can be an oral or written assertion. § 27-801(1)(a). Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere. See *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022). A statement is not hearsay if the statement is offered against a party and is his or her own statement, in either his or her individual or a representative capacity. See § 27-801. To be admissible, each layer of hearsay must have an applicable exception to the hearsay rule. See Neb. Rev. Stat. § 27-805 (Cum. Supp. 2022).

Applying these principles, the district court properly excluded Luke's testimony about what Ariah and Briley reported concerning Carmela's statements. During trial, the following exchange was had on the record,

> [LUKE'S ATTORNEY:] Do you ever have concerns about how [Carmela] speaks to your daughters about you?
>
> . . . .
>
> [LUKE]: Yes.
> [LUKE'S ATTORNEY]: Why do you have those concerns?
> [LUKE]: Briley has mentioned some things and so had Ariah.
> [LUKE'S ATTORNEY]: What specific things have they mentioned?
> [CARMELA'S ATTORNEY]: I'll object, hearsay.
> THE COURT: I'm going to sustain the objection.

Luke attempted to introduce statements allegedly made by Carmela through testimony about what the children reported. However, this testimony constitutes inadmissible hearsay because it involves out of court statements offered to prove the truth of the matter asserted. Because Luke did not establish a separate hearsay exception for the children's out of court statements, the testimony was properly excluded.

Luke's related claim that the district court improperly limited his cross-examination of Briley likewise fails. The Nebraska Supreme Court has made it clear that the scope of cross-examination of a witness rests largely in the discretion of the trial court, and its ruling will be upheld on appeal unless there is an abuse of discretion. See *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007). Trial judges retain wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. See *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008).

The exercise of judicial discretion is implicit in the determination of relevancy under § 27-401. As previously discussed, evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See § 27-401.

During cross-examination, Briley was asked about another incident involving a pastor. Carmela objected, stating that the question was beyond the scope of direct examination and was irrelevant. Luke claimed that the questioning went to character and credibility; however, Carmela further objected based on time frame, stating that the incident occurred over 2 years ago. The district court sustained the objection.

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020). Erroneous exclusion of evidence does not require reversal if the evidence would have been cumulative and other relevant evidence, properly admitted, supports the trial court's finding. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

Here, the district court sustained Carmela's objections to the cross-examination of Briley regarding an incident with a pastor. By that point in the hearing, the substance of that evidence had already been introduced through other witnesses. Both Luke and Elena had testified regarding the incident, stating that Briley had exaggerated the circumstances of a pastor "hitting" her with a Bible. Based on this testimony already provided, any further cross-examination of Briley on this matter would have been cumulative and would not have elicited additional information likely to alter the district court's perception of her credibility.

Because the district court already received testimony that was substantially similar to the excluded testimony, Luke's substantial rights were not unfairly prejudiced.

Therefore, Luke cannot show that the district court abused its discretion in either excluding the hearsay testimony or limiting the cross-examination. This assignment fails.

CONCLUSION

For the foregoing reasons, we affirm the district court's order affirming the ex parte domestic abuse protection order against Luke and in favor of Carmela.

AFFIRMED.

- 9 -