IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JENSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVEN D. JENSEN, APPELLANT.

Filed December 20, 2022.    No. A-22-045.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Joseph Kuehl, of Lefler, Kuehl & Burns Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Steven D. Jensen appeals from his conviction of first degree sexual assault. On appeal, he asserts that his trial counsel was ineffective in various respects. For the reasons stated herein, we affirm.

STATEMENT OF FACTS

Between the dates of June 1, 2003, and February 15, 2005, Jensen, who was over 19 years old, allegedly had sexual intercourse with the victim, who was under the age of 16. After the victim reported the assault in 2019, Sergeant Daniel German with the Bellevue Police Department Special Victim's Unit followed up by interviewing the victim, Jensen, and Katie Gillespie-Jensen, who was the victim's former friend and Jensen's current wife. After interviewing Gillespie-Jensen and Jensen at their residence, Sergeant German determined there was sufficient evidence to arrest

- 1 -

Jensen but allowed Jensen to turn himself in. Jensen was charged in Sarpy County District Court with first degree sexual assault, a Class II felony. See Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016). The information was later amended twice to change the date of the offense.

A jury trial was held in October 2021. During the trial, witnesses included the victim, Sergeant German, and Gillespie-Jensen.

The victim testified that she met Jensen through Gillespie-Jensen sometime between the end of her freshman year to the beginning of her sophomore year of high school. At that time, Gillespie-Jensen was dating James Ullman who the victim described as having grey hair and being older than her parents who were in their mid-to-late 30's. The victim and Gillespie-Jensen did not dispute that Ullman gave them rides, provided them with money for shopping trips, had them model for him afterwards, provided them with alcohol, and had sexual involvement with both girls. The victim testified that Gillespie-Jensen introduced her to Jensen at Ullman's residence so that the victim and Jensen could "get together" which the victim understood to mean something sexual. The victim testified that, at some point during that evening, Jensen penetrated her. At that time, the victim testified she was under the age of 16 and Jensen was over the age of 19. The victim testified that she did not report the incident until 2019 when she learned that Ullman was a school bus driver, which made her concerned for the safety of other children, and that she felt it was necessary to include in her report the encounter with Jensen to provide the police the "whole truth." The victim stated that she felt bad having to also report Jensen because she knew that Jensen and Gillespie-Jensen were now married and were attempting to have a child.

Gillespie-Jensen testified that she met the victim when they were in junior high school; that the victim was a year older than her; that she met Ullman around that same time frame; and that she met Jensen online when she was 14 years old, but that she did not meet Jensen in person until after she was 16 years old. During her testimony, defense counsel offered multiple photographs into evidence depicting a timeline of events where Gillespie-Jensen and the victim were together. Based upon this timeline of events, Gillespie-Jensen testified that she believed the victim was over the age of 16 at the time Jensen penetrated her. On cross-examination, Gillespie-Jensen admitted that she was untruthful during her initial interview with Sergeant German concerning when she met Jensen, whether Jensen knew Ullman, and whether Jensen knew the victim.

The State called the victim's mother as a rebuttal witness. During this line of testimony, the State asked questions about a photograph of the victim in her high school dance uniform which Gillespie-Jensen used in her timeline to suggest the event depicted occurred during the victim's senior year. The victim's mother testified that the victim only participated in dance during her freshman year and the photo would have been taken during the victim's freshman year. This testimony was consistent with the victim's testimony on the same subject.

The jury convicted Jensen of the charged offense and thereafter, the court sentenced Jensen to 6 to 12 years' imprisonment with credit for 5 days served. Jensen has timely appealed.

## ASSIGNMENTS OF ERROR

Jensen's assignments of error, renumbered and restated, are that his trial counsel was ineffective for: (1) allowing the victim to narrate her story without objection, (2) inadequately impeaching the victim with prior inconsistent statements, (3) failing to frame questions about drugs

and alcohol in a way to avoid objections and then giving up on that issue, (4) failing to call as a witness the author of certain calendars so that they could be received as exhibits at the time of trial, (5) failing to move for dismissal at the end of the trial, and (6) that the culmination of the errors made by trial counsel prejudiced Jensen and did not allow him to receive a fair trial.

## STANDARD OF REVIEW

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

On appeal, Jensen contends that his trial counsel was ineffective for: (1) allowing the victim to narrate her story without objection, (2) inadequately impeaching the victim with prior inconsistent statements, (3) failing to frame questions about drugs and alcohol in a way to avoid objections and then giving up on that issue, (4) failing to call as a witness the author of certain calendars so that they could be received as exhibits at the time of trial, (5) failing to move for dismissal at the end of the trial, and (6) that the culmination of the errors made by trial counsel prejudiced Jensen and did not allow him to receive a fair trial.

In *State v. Anders*, 311 Neb. 958, 977-79, 977 N.W.2d 234, 252 (2022), the Nebraska Supreme Court stated:

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice, the defendant must demonstrate a reasonable probability

that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

Whether cumulative error deprived a criminal defendant of his or her Sixth Amendment right to a trial by an impartial jury presents a question of law to be reviewed de novo.

Further, as the Nebraska Supreme Court provided in *State v. Drake*, 311 Neb. 219, 237, 971 N.W.2d 759, 774 (2022):

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

### FAILURE TO OBJECT TO NARRATIVE TESTIMONY

Jensen first claims that his trial counsel was ineffective for not objecting to the victim's irrelevant "narrative about her mother, her father, her suicide attempt, her ex-boyfriend, her therapist, etc."

As noted by the Nebraska Supreme Court in *State v. Anders*, 311 Neb. 958, 983, 977 N.W.2d 234, 255 (2022):

The decision whether or not to object has long been held to be part of trial strategy. When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

Here, during direct examination of the victim, the State asked what events led up to her decision to make a police report. The victim responded, stating:

I went through several other abusive relationships after that. And then I was going through a divorce, and I was having a really hard time with the divorce and with my oldest daughter, who was rebelling terribly.

I had asked my dad to watch—or not to watch, but to take my oldest daughter for a—for a little while. And I remember him calling me a couple of days later. We were checking in with each other about her. And he asked me when I wanted her back. And I said, honestly, Dad, I don't know if I do.

And he just went off the deep end and told me that it was my fault, everything she was going through was my fault and that I had drug her through all this stuff. And I remember saying to my dad, get out. And he just became, like, irate. He punched a hole in my closet door. He ripped off the baby gate.

And something in me that day just, like, snapped. And I tried to kill myself after he left. So, I remember my mom coming to the emergency room and them agreeing to let her take me home. And I remember her telling me, like, if you're not going to be hospitalized after this, like, you must get in therapy. You must get your shit together and be there for those girls.

So, I started going to therapy every week. I took FML from work and just focused on my mental health. And the therapist that I see I had been seeing through, like, my divorce and stuff. So, he—like, I had told him about what happened with Jim and with Steve, but it was never, like, something that was on the forefront or, like, the main issue for us to talk about.

So, kind of when things really started calming down with, like, the rest of my life, we kind of started to dive into, like, you know my childhood and, I mean, my dad and, you know, all this stuff that had happened to me.

And so, I became curious. It had been years since I had heard from [Gillespie-Jensen], so I got curious. I wonder what they're doing now. And I—so I got on Facebook, and I looked up [Ullman].

Jensen argues that his counsel was ineffective in failing to make a relevancy objection which he claims would have been sustained.

Evidence which is not relevant is inadmissible. Neb. Rev. Stat. § 27-402 (Reissue 2016). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Relevancy requires only that the probative value be something more than nothing." *State v. Munoz*, 303 Neb. 69, 82, 927 N.W.2d 25, 36 (2019).

The record does not indicate why counsel did not make an objection to this narrative response. However, the record is sufficient to review the merits of this claim. Jensen's argument in support of this assignment does not focus on trial counsel's failure to object to a narrative response by the victim. Instead, Jensen argues the narrative response was not relevant to any issue in the proceeding. To the contrary, the victim's testimony related to why she eventually decided to report the incident in response to Jensen's challenge to the long delay in making the report. Because the response is probative of a fact that was of consequence to the proceeding, a relevancy objection would have been overruled. Counsel is not ineffective for failing to object to a meritless argument. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017) (as a matter of law,

counsel cannot be ineffective for failing to raise meritless argument). Accordingly, Jensen's assignment of error fails.

### FAILURE TO PROPERLY IMPEACH VICTIM ON PRIOR INCONSISTENT STATEMENTS

Jensen next contends that his trial counsel was ineffective for failing to properly impeach the victim. First, Jensen argues that trial counsel was ineffective for giving up on impeaching the victim as it related to her prior inconsistent statement about when she met Jensen. Second, Jensen argues that trial counsel was ineffective for giving up on impeaching the victim about her prior inconsistent statement as it related to whether the victim maintained a relationship with Gillespie-Jensen throughout high school. Jensen argues that counsel's failure to properly impeach the victim governing this subject matter compromised counsel's ability to show the jury that the victim was not a reliable historian as it relates to the age of the victim at the time of Jensen's alleged sexual assault.

In *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021), the defendant assigned that counsel was ineffective in cross-examining particular witnesses as it related to their prior inconsistent statements to law enforcement. Because the record was devoid as to why trial counsel chose not to ask particular questions of the witnesses, the court found the record was insufficient to address the claim on direct appeal.

Likewise, here the record shows that trial counsel attempted to elicit testimony from the victim relating to alleged prior inconsistent statements on these subjects but did so by attempting to refresh the victim's memory and using both her police interview and her deposition testimony. The State objected on the basis that trial counsel's questioning constituted an improper attempt to refresh the victim's memory which was sustained by the court. Defense counsel did not further attempt to impeach the victim using the alleged prior inconsistent statements. Because the record is devoid as to why trial counsel failed to further pursue this line of questioning, we find the record is insufficient to address this claim on direct appeal.

### FAILURE TO FRAME QUESTIONS TO AVOID OBJECTIONS

Jensen next assigns that his counsel was ineffective for failing to properly frame questions during the direct examination of Gillespie-Jensen relating to whether drugs and alcohol were present at parties that the victim attended with Gillespie-Jensen. He argues that counsel received objections from the State related to the questions which the court sustained because counsel failed to cure the defects posed by the State's objections.

From our review of the record, counsel attempted to elicit testimony from Gillespie-Jensen relating to whether she attended parties with the victim where they consumed drugs and alcohol. In a sidebar, following relevance and foundation objections by the State, counsel indicated that his intent was to show how the drug and alcohol use would have affected the victim's ability to accurately recall dates and times. The court sustained the objection for lack of foundation as counsel offered no timeframe associated with the questions. Thereafter, counsel attempted to ask follow-up questions governing the general subject matter of the victim and Gillespie-Jensen attending parties between their eighth grade and junior years in high school where illegal

substances were available and consumed, all of which were met with objections and rejected by the court. Jensen argues that:

> During the sidebar, the Court was clear that time frame was the issue. An easily curable defect, but, upon returning to questioning, trial counsel failed to adequately cure that defect. If the jury had been able to hear this line of questioning, it would be one more detail that [Gillespie-Jensen] was able to remember that [the victim] was not able to recall or testify about. Another plus in the credibility column for [Gillespie-Jensen] and a minus for [the victim.]

Brief for appellant at 16. Jensen then argues that, because this case comes down to a credibility contest between the victim and Gillespie-Jensen, trial counsel's omission was prejudicial to his defense. We find the record is sufficient to address this claim.

Contrary to Jensen's argument, the victim was not asked whether she and Gillespie-Jensen attended parties where they consumed drugs and alcohol. The victim's sole response to the subject matter was an acknowledgement that Ullman provided the girls with alcohol. As such, the record affirmatively demonstrates that Jensen was not prejudiced by counsel's failure to elicit testimony on the subject as it would not have contradicted the victim's testimony, nor would it have aided in his attack on the victim's credibility in the manner Jensen contends. This assignment of error fails.

### FAILURE TO CALL AUTHOR OF CALENDARS

Jensen next contends that his counsel was ineffective for failing to call the author of certain calendar entries made between 2004 and 2006 to cure certain foundation and hearsay objections made when trial counsel attempted to admit them into evidence.

When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

Here, Gillespie-Jensen testified that she participated in a church youth group and obtained calendars from them because the calendars provided her with a timeframe as to when she and the victim met Jensen. She correlated that she and the victim met Jensen one to two months prior to going to the Bellevue Berry Farm with her church youth group in the fall of 2005. She testified that she requested the calendars from the church and noticed that the youth group attended the Bellevue Berry Farm only one time between 2004 and 2006. She testified that, because the encounter with Jensen occurred 2 months prior to the church youth group trip in the fall of 2005, she knows the encounter with Jensen occurred after the victim's 16th birthday. The evidence previously established the victim's 16th birthday was on February 16, 2005. Counsel attempted to

offer all three calendars into evidence, but the court sustained the State's hearsay and foundation objections.

Jensen asserts that, had counsel called the author of the calendars, the testimony would have cured the hearsay and foundation objections and the calendars would have been admitted into evidence. Jensen acknowledges that although the 2005 calendar was eventually offered by the State and received into evidence during Gillespie-Jensen's cross-examination, the 2004 and 2006 calendars were not and were unavailable to corroborate Gillespie-Jensen's testimony that the trip to the Bellevue Berry Farm was limited to 2005.

A record on direct appeal is sufficient to resolve a claim of ineffective assistance of counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In *Lowman*, the appellant made a similar argument that his trial counsel was ineffective for failing to call two witnesses. The Nebraska Supreme Court found that the record was sufficient to resolve the claim and that counsel did not perform deficiently as the witnesses' testimony would have provided little relevance to the charged crimes. We reach a similar conclusion here.

Gillespie-Jensen testified that to the best of her memory, the encounter with Jensen occurred in the fall of 2005, 2 months prior to her trip with a church group to the Bellevue Berry Farm. The 2005 calendar was eventually admitted into evidence demonstrating the trip took place as it related to Gillespie-Jensen's version of events. Gillespie-Jensen testified that she reviewed the 2004 and 2006 calendars and they did not depict that a similar trip occurred. As such, there was no evidence to suggest that the trip occurred in any other year and the issue before the jury was whether the trip itself was a proper correlation by Gillespie-Jensen with the encounter with Jensen. Prejudice is defined as a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Calling another witness to verify that the trip to the Bellevue Berry Farm did not occur in 2004 or 2006 would have been cumulative to Gillespie-Jensen's testimony on the subject and the validity of the date of the trip was not disputed at trial. The disputed matter was Gillespie-Jensen's correlation of the timing of the meeting with Jensen to the timing of the church group trip. Under these circumstances, we hold that trial counsel's failure to call a witness from the church to lay further foundation for the 2004 and 2006 church calendars was not prejudicial to Jensen's defense. This assignment fails.

FAILURE TO FILE MOTION TO DISMISS

Jensen argues that his counsel was ineffective for failing to file a motion to dismiss.

In *State v. Dixon*, 306 Neb. 853, 867-68, 947 N.W.2d 563, 574-75 (2020), the Nebraska Supreme Court stated:

> A motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict. And a motion for directed verdict is simply another name for a motion for judgment of acquittal. All three motions assert that the defendant should be acquitted of the charge because there is no legally sufficient evidentiary basis on which a

reasonable jury could return a guilty verdict. Thus, however styled, this type of motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

Here, Jensen does not argue the grounds upon which counsel should have pursued the motion to dismiss. Rather he argues that trial counsel should always file a motion to dismiss and failing to do so is deficient performance. He generally asserts that the evidence did not warrant a jury deliberation, that he does not understand how the jury returned a guilty verdict, and that the verdict means that the jury believed the testimony of the victim rather than the testimony of his witness.

After reviewing this record in the light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and in this case, they did so find. As such, we find no deficient performance associated with counsel's failure to file a motion to dismiss because such motion was meritless. Counsel is not ineffective for failing to make a meritless argument. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017) (as a matter of law, counsel cannot be ineffective for failing to raise meritless argument). This assignment of error fails.

CULMINATION OF ERRORS

Jensen's final claim of ineffective assistance of trial counsel is that the culmination of trial counsel's errors necessitated ordering a new trial or dismissal of the charges against him. He asserts that trial counsel's errors are the reason that the jury believed the victim's testimony over the testimony of defense witnesses.

In *State v. Anders*, 311 Neb. 958, 986, 977 N.W.2d 234, 256 (2022), the Nebraska Supreme Court stated:

We have recognized the doctrine of cumulative error in the context of a criminal jury trial. Although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his or her constitutional right to a public trial by an impartial jury.

In applying that doctrine to the record before the court, the court found that the cumulative error doctrine did not support the appellant's argument where the majority of his ineffective assistance of counsel claims were without merit or not sufficiently alleged and "[t]he remaining assignments of error, for which the record is insufficient to address in this direct appeal, cannot form the basis for a claim of cumulative error." *Id*. at 986, 977 N.W.2d at 257.

Here, like in *State v. Anders, supra*, the majority of Jensen's claims of ineffective assistance of counsel were either without merit or the remainder of the assignments of error, for which the record is insufficient to address in this direct appeal, cannot form the basis of cumulative error. This assignment fails.

## CONCLUSION

For the reasons stated herein, we affirm Jensen's conviction and sentence and find that only one of his allegations of ineffective assistance of trial counsel was preserved.

AFFIRMED.